Booker W. Evans and Katie F. Evans v. Commissioner.
Booker W. Evans & Katie F. Evans v. Commissioner
Docket No. 32655.
United States Tax Court
1953 Tax Ct. Memo LEXIS 7; 12 T.C.M. (CCH) 1470; T.C.M. (RIA) 54010; December 31, 1953
*7 1. Respondent determined deficiencies in petitioners' taxes for 1945 through 1948 based upon calculation of income pursuant to the "net worth increase" method. Held, use of the "net worth increase" method was unjustified and improper since the books of petitioners' cafe adequately and correctly reflected income and there was no dispute as to the correctness of petitioners' income from other sources. The books reveal that petitioners understated their income for 1946 and 1947, but overstated their income for 1945 and 1948. 2. Held, no part of petitioners' deficiencies was due to fraud with intent to evade taxes. 3. Held, respondent failed to prove that petitioners understated 1946 income to the extent necessary for the five-year period of limitation to apply, Sec. 275 (c) of the Code. However, a waiver extending the normal three-year period, Sec. 275 (a), was timely signed and the deficiency notice was mailed prior to the termination of the extension contained in that waiver, Sec. 276 (b) of the Code. M. Ashley Dickerson, Esq., for the petitioners. D. Louis Bergeron, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has computed petitioners' *8 income for the taxable years 1945 through 1948 pursuant to the so-called "net worth increase" method and has determined the following income tax deficiencies and penalties for those years: 50% Fraud
Year
Deficiency
Penalty
1945
$1,725.31
$1,317.36
1946
832.33
416.17
1947
6,006.87
3,003.44
1948
184.36
92.18 Of the above-listed $1,317.36 fraud penalty for 1945, $454.71 is applicable to a deficiency of $909.41 previously determined by the Commissioner and paid by petitioners, which deficiency the Commissioner now maintains was due, at least in part, to fraud with intent to evade taxes. Petitioners contend: (a) that the Commissioner erred in arbitrarily resorting to the net worth method to determine their income since they maintained adequate books and records which clearly reflect that income, (b) that, in any event, the Commissioner's computations of income pursuant to the net worth method are incorrect, (c) that they actually overpaid their income taxes for the years 1945, 1947, and 1948, (d) that the Commissioner is barred by the statute of limitations (section 275 (a), I.R.C.) from assessing deficiencies for 1945 and 1946, and (e) that they are not liable for fraud penalties. As regards the statute *9 of limitations, the Commissioner argues that a waiver extending the period of limitation was signed by petitioners for the 1946 tax year and the statutory deficiency notice was mailed to them prior to the expiration of that extension. Further, the Commissioner maintains that the five-year period of limitation prescribed in section 275 (c) of the Code is applicable both to 1945 and 1946, since the amount of gross income petitioners failed to report for those years was in excess of 25 per cent of the amount reported, and the statutory notice of deficiency was mailed prior to the expiration of the five-year period. Findings of Fact Petitioners Booker W. Evans and Katie F. Evans (hereinafter referred to as Booker and Katie, respectively) are husband and wife and reside in Montgomery Alabama. For the years here involved they filed joint returns, on the cash receipts and disbursements basis, with the Collector of Internal Revenue for the District of Alabama. Katie was employed as a teacher in the Montgomery County Public Schools during the years in issue. The wages derived from that position represented the only income earned by her from 1945 through 1948. In addition, she owns a dwelling *10 house at what was then numbered 908 Goode Street, Montgomery, which was first converted to rental use in 1948 and which yielded in that year net rents of $101.50. Booker is the owner and operator of the Evans Cafe located at 36 (formerly 20) North Lawrence Street, in the heart of one of Montgomery's negro areas. It is a small restaurant employing, during 1945 through 1948, a manager and from four to six other employees, and serving full meals at low prices. In addition to food, beer and soft drinks are sold at the Cafe. The Cafe is Booker's only source of income. It was Booker's practice to himself open the Cafe at 6:00 a.m. and remain until 4:30 p.m. when his manager, Lonnie L. Wagstaff, arrived to take over until closing time Wagstaff was in complete charge of the bookkeeping and compiled the information from which were prepared the returns for the years here involved. Wagstaff had formerly been a bookkeeper for the Atlanta Life Insurance Company. A simplified single-entry, cash-basis method of bookkeeping was employed. Two books were maintained, one for receipts, the other for disbursements. All the sales were rung up on (and the money deposited in) the cash register, which was *11 tended either by Wagstaff or one of the other employees. All the expenditures were paid in cash from the register. In fact, no bank account was maintained by Booker in connection with the business. At the end of each day Wagstaff would reconcile the balance in the cash register with both the cash register tape and the invoices (marked "paid") representing the day's expenditures. He would then enter the total of the day's receipts in the book maintained for that purpose, breaking the entry down to show receipts from food, beer and soft drinks, and would enter the day's expenditures, classified as to the types of items purchased, in the disbursements book. Both the receipts book, along with its supporting cash register tapes, and the disbursements book, along with its supporting "paid" invoices, were readily made available by Booker for inspection by respondent's agent. The books and records kept by Booker were sufficiently complete and adequate for the computation of income from the Cafe for all years in question. The income reported by petitioners in the joint returns filed for the years involved was as follows: 1945
1946
1947
1948
Katie's salary
$1,175.00
$1,488.00
$2,050.00
$2,548.00
Booker's income from Evans Cafe
3,410.75
2,344.33
2,432.85
3,509.65
Rent - 908 Goode Street
101.50
Reported Adjusted Gross Income
$4,585.75
$3,832.33
$4,482.85
$6,159.15
*12 In addition, petitioners paid taxes and interest on an extra $3,357.06 which, in 1948, was determined by respondent to have been omitted from petitioners' 1945 return. Petitioners admit that Wagstaff made a mathematical error in adding the Evans Cafe receipts for 1945 which resulted in an understatement of income for that year, but not to the extent determined by respondent. A total of $1,010.88 ($909.41 in taxes and $101.47 interest) was paid by petitioners on the aforementioned $3,357.06 in the following installments: Amount
Date of Payment
$300.00
November 17, 1948
705.83
December 10, 1948
5.05
January 4, 1949
Katie's reported salary and the reported net rent on 908 Goode Street are correct. However, errors were made in determining and reporting the income derived from the Evans Cafe. An analysis of the books of the Cafe, which we have found adequately reflected income, was made by a public accountant retained for that purpose by petitioners. He conducted his audit by checking the Cafe's books, cash register tapes and invoices. The resultant figures reflected gross profits from operations of between 30 per cent and 40 per cent of sales for 1945, 1947, and 1948, and gross profit of 25 per *13 cent of sales for 1946. After careful study, we find that the income determined by this public accountant from the Evans Cafe books and records is correct and that, taking those figures into account, the following is a proper statement of petitioners' adjusted gross income for the years in issue: 1945
1946
1947
1948
Katie's salary *
$1,175.00
$1,488.00
$2,050.00
$2,548.00
Booker's income from Evans Cafe
5,295.08
2,658.19
2,475.70
3,406.92
Rent - 908 Goode Street *
101.50
Correct Adjusted Gross Income
$6,470.08
$4,146.19
$4,525.70
$6,056.42
Petitioners actually paid taxes on the following adjusted gross income: 1945
1946
1947
1948
$7,942.81
$3,832.33
$4,482.85
$6,159.15
The statutory deficiency notice applicable to the present proceeding was mailed to petitioners on November 20, 1950, more than three years following the effective filing date of petitioners' returns for 1945 and 1946 (March 15, 1946 and March 15, 1947, respectively). Concerning the 1946 deficiency, petitioners, on February 21, 1950, and respondent on February 24, 1950 (prior to the expiration of the three-year period of limitation applicable to 1946) voluntarily signed a waiver extending the period to June 30, 1951, *14 and the deficiency notice was mailed before that extension terminated. The statutory period of limitation in I.R.C., section 322 (d), relating to the refund or credit of overpayments of tax, is satisfied as regards 1945 to the extent that petitioners paid additional taxes for that year (totaling $710.88) on December 10, 1948 and January 4, 1949, which dates are less than two years prior to the mailing of the deficiency notice on November 20, 1950, section 322 (d) (1) (A) of the Code. The section 322 (d) period is also satisfied as regards the 1948 overpayment, since the 1948 return was filed, and taxes paid, on March 15, 1949, which is likewise less than two years prior to November 20, 1950. The deficiencies determined by respondent for the years 1945 through 1948 were arrived at as a result of computation of petitioners' income pursuant to the net worth method. After a careful consideration of all the record, we have concluded and so find that petitioners' books and records correctly reflected their income for each of the years in question and that respondent's use of the increase in net worth method is unjustified and did not correctly reflect petitioners' net income for the taxable *15 years. The adjusted gross income for each of the years 1945 through 1948 on which petitioners paid taxes, and their correct adjusted gross income for each of those years, are as follows: 1945
1946
1947
1948
Taxed Adjusted Gross Income
$7,942.81
$3,832.33
$4,482.85
$6,158.15
Correct Adjusted Gross Income
6,470.08
4,146.19
4,525.70
6,056.42
Difference
$1,472.73
($ 313.86)
($ 42.85)
$ 101.73
The period of limitation for refund or credit of overpayments of tax (section 322 (d) (1) (A), I.R.C.) has not run as regards the 1945 overpayment since petitioners paid additional taxes and interest for 1945 amounting to $710.88 within two years of November 20, 1950, the mailing date of respondent's deficiency notice applicable to that year. Nor has that period run as regards the 1948 overpayment, since petitioners filed their 1948 return and paid the tax thereon on March 15, 1949, which is likewise within two years prior to November 20, 1950. The period of limitation applicable to assessment of petitioners' 1946 deficiency, section 275 (a) of the Code, has not run since petitioners, and respondent's agent, timely signed a waiver extending that period to June 30, 1951, and the deficiency notice was mailed on November *16 20, 1950, prior to the expiration of that extension, section 276 (b) of the Code. No part of petitioners' deficiencies was due to fraud with intent to evade taxes. Opinion BLACK, Judge: Respondent has determined deficiencies in petitioners' income taxes for the years 1945 through 1948 on the basis of reconstruction of petitioners' income pursuant to the "net worth increase" method, section 41 of the Code. [1] *17 He has also asserted fraud penalties for those years, section 293 (b) of the Code. [2] We have found as facts that petitioners' income during the years in question came from three sources only: Katie's salary from teaching school, Booker's earnings from the Evans Cafe, and (in 1948 only) rent from a dwelling house owned by Katie at 908 Goode Street, Montgomery, Alabama. We have further found that Katie's salary and the rental income were properly reported and there appears to be no dispute on this score. As regards the Evans Cafe, income from that source was not correctly reported for the years in issue. However, books were maintained for that business and were in charge of Booker's manager, who had formerly been a bookkeeper for another business concern. There were a receipts book and a disbursements book, both of which were kept on a daily basis. All sales were *18 rung up on (and deposited in) the cash register and expenditures were paid in cash taken from that register. At the end of the day Booker's manager would reconcile the balance in the cash register with the cash register tape and the paid invoices representing the day's expenditures. He would then enter the amount of the daily receipts (broken down into entries for food, beer, and soft drinks) in the receipts book, and would enter the expenditures (classified as to types of items) in the disbursements book. No bank account was maintained in connection with the Cafe business. The Evans Cafe books were readily made available by Booker for inspection by respondent's agent and compilations from these books made by a qualified public accountant were accepted by us in evidence. The books were in the courtroom at the time of the meeting. Booker had also preserved the cash register tapes and invoices supporting the book entries. The books revealed gross profit from operations of between 30 per cent and 40 per cent of sales for 1945, 1947, and 1948, and gross profit for 1946 of about 25 per cent of sales. Considering all the facts we have found, and so hold, that the books of the Evans Cafe *19 accurately reflected income from that source. Such being the case, it is of no moment that the books were simple and the bookkeeping method not more refined. Harnsberger's, Inc., 7 B.T.A. 250; Bechelli v. Hofferbert, 111 Fed. Supp. 631 (D.C.D. of Md.). In this latter case the court said: "There is no prescribed detail as to just what books or how many must be kept. The question in each case must be determined on its particular facts and in view of the nature, volume and complexity of the business. Here the books as kept do show day by day receipts and expenses. If the figures are correct the books are sufficient to show the net income." * * * Since the Cafe books were sufficient to show Booker's income, and since Katie's salary and the rental income were correctly reported, respondent's employment of the net worth method of computing petitioners' income was unjustified. Thomas A. Talley, 20 T.C. -, PROMULGATED June 20, 1953; Helvering v. Taylor, 293 U.S. 507. What we said in Thomas A. Talley, supra, is particularly applicable to, and dispositive of, this issue: "The limitations of the increase in net worth method are well known. Often it results in an inaccurate statement of income *20 or the placing of income in the wrong year and, at best, it yields only an approximation. It is a method of reconstructing income rather than a method of computing it. "The ordinary method of computing taxable income in accordance with the general pattern of the Code is to subtract allowable deductions from a taxpayer's gross income. The increase in net worth method is, of course, not in accord with this statutory pattern and is permitted by virtue of section 41, Internal Revenue Code, only in unusual circumstances, none of which is present here. "Section 41 provides that 'net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books' of the taxpayer. The Commissioner's authority under section 41 to compute the income 'in accordance with such method as in the opinion of the Commissioner does clearly reflect the income' exists only if no method of accounting has been regularly employed in keeping the books of the taxpayer, or 'if the method employed does not clearly reflect the income.' See Regulations 111, sections 29.41-1 and 29.41-2. The evidence clearly establishes that neither of those qualifying conditions existed here * *21 * *. An accurate computation of income for all years in question could have been made from the books of account." It is, of course, true that books themselves are not necessarily conclusive and that their inaccuracy may be established by other evidence. Moreover, evidence may be introduced to show additional sources of income. See Bechelli v. Hofferbert, supra.Here respondent relied upon increases in petitioners' bank balances, their building and furnishing of a house, and estimates of their living expenses to prove that their income was in excess of what we have found to be correct. The evidence convinces us that the greater part of petitioners' increases in net worth resulted, not from current income, but from savings in prior years, gifts and loans, and that respondent overestimated petitioners' living expenses. See Edward Walsdorf, 4 B.T.A. 367. Our conclusion is based upon the testimony of a number of witnesses and supporting exhibits, none of which was impugned by inconsistent or contradictory proven facts nor appear to be inherently improbable. Grace Bros., Inc. v. Commissioner (C.A. 9), 173 Fed. (2d) 170. Respondent contends that petitioners' deficiencies are due to fraud *22 with intent to evade taxes and that the statutory 50 per cent fraud penalty should be imposed, section 293 (b), supra, footnote 2. Respondent carries the burden of proving fraud by clear and convincing evidence, section 1112 of the Code, [3]Wiseley v. Commissioner (C.A. 6), 185 Fed. (2d) 263. That burden has by no means been carried in this case as regards either the deficiencies we have found for the years 1946 and 1947, or the deficiency for 1945, which taxpayer satisfied by payments in November and December 1948 and January 1949. We, accordingly, hold that no part of petitioners' deficiencies for 1946 and 1947, and no part of the previously satisfied deficiency for 1945, was due to fraud with intent to evade taxes. It is clear that there is no deficiency for 1948, but there is an overpayment for that year. The final questions to be considered concern periods of limitation. Petitioners contend that no liability can be asserted against them for deficiencies *23 in regard to the tax years 1945 and 1946, because the deficiency notice in regard thereto was not mailed until November 20, 1950, which was more than three years following the effective dates their returns for those years were filed (March 15, 1946 and March 15, 1947, respectively), Internal Revenue Code, sections 275 (a), (f), and 277. [4] *24 We need only consider 1946, since there is no deficiency for 1945. Respondent maintains first that the five-year period of limitation provided for in section 275 (c) of the Code [5] applies since petitioners omitted from their 1946 return properly includible gross income in excess of 25 per cent of the gross income actually reported therein. Respondent has failed to prove this, C. A. Reis, 1 T.C. 9, and, in fact, we have found this not to be the case. Respondent further contends, however, that a waiver was executed extending the period of limitation to June 30, 1951, that that waiver was voluntarily signed by petitioners on February 21, 1950 and by respondent's agent on February 24, 1950 (before the expiration of the normal three-year period of limitation), and that the deficiency notice was mailed prior to June 30, 1951. Respondent is correct in this contention *25 and, consequently, we hold that the period of limitation has not run on petitioners' liability for 1946 deficiencies, section 276 (b) of the Code. [6] We have found that petitioners overpaid their taxes for 1945 and 1948. As here pertinent, section 322 (d) of the Code provides that petitioners *26 may only receive a credit or refund for overpayment of a particular year's taxes to the extent that such taxes were paid (1) within two years prior to the mailing of the applicable deficiency notice, or (2) within three years prior to the mailing of such notice, if it was mailed within three years following petitioners' filing of the particular year's return section 322 (d) (1) (A), (B), of the Code. [7] There is no question that the overpayment of 1948 taxes was made within the specified time limit since the 1948 return was filed and taxes paid on March 15, 1949, and the deficiency notice applicable to 1948 (and the other years here in issue) was mailed on November 20, 1950. As regards the overpayment for 1945, we have found that as a result of respondent's determination (in 1948) that petitioners were deficient in their 1945 taxes, petitioners paid additional taxes and interest for 1945 of $1,010.88. Payments totaling $710.88 of that $1,010.88 were made on December 10, 1948 and January 4, 1949, less than two years prior to the mailing of the aforementioned deficiency notice. Therefore, refund or credit for the 1945 overpayment, to the extent that such overpayment is not in excess of *27 $710.88, is not barred by the running of the applicable period of limitation. Decision will be entered under Rule 50. Footnotes
*. Same as reported by petitioners.↩
1. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. 2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩
3. SEC. 1112. BURDEN OF PROOF IN FRAUD CASES. In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner.↩
4. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. -the amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *
(f) For the purposes of subsections (a), (b), (c), (d), and (e), a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day. SEC. 277. SUSPENSION OF RUNNING OF STATUTE. The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272(a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for sixty days thereafter. 5. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. ↩
6. SEC. 276. SAME - EXCEPTIONS. * * *
(b) Waiver. - Where before the expiration of the time prescribed in section 275↩ for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.
7. SEC. 322. REFUNDS AND CREDITS. * * *
(d) Overpayment Found by Board. - If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of tax in respect of such taxable year, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer. No such credit or refund shall be made of any portion of the tax unless the Board determines as part of its decision (1) that such portion was paid (A) within two years before * * * the mailing of the notice of deficiency, * * * or (B) within three years before * * * the mailing of the notice of deficiency, * * * if * * * the notice of deficiency [was] mailed, * * * within three years from the time the return was filed by the taxpayer, * * *↩